<table>
<tr><td colspan="2"><strong>DISTRICT COURT OF THE VIRGIN ISLANDS</strong><br><br><strong>DIVISION OF ST. CROIX</strong></td></tr>
</table>

JAMIE LAMMERING,

      **Plaintiff/Counter-Defendant,**

      **v.**

JUSTIN KORN and
MIRAMAR VI, LLC,

      **Defendants/Counter-Plaintiffs.**

               **1:23-cv-00059-WAL-EAH**

TO:    **Lee J. Rohn, Esq.**
        **Robin P. Seila, Esq.**
        **Andrew P. Remeselnik, Esq.**
        **Joseph D. Sauerwein, Esq.**
        **Matthew J. Duensing, Esq.**

## <u>ORDER</u>

**THIS MATTER** comes before the Court on the "Motion to Strike Rebuttal Report," filed on July 18, 2025 by Attorney Matthew J. Duensing on behalf of Defendants/Counter-Plaintiffs Justin Korn and Miramar VI, LLC ("Defendants"). Dkt. No. 187. Defendants contend that the expert report served by Plaintiff Jamie Lammering on July 7, 2025 constitutes an unauthorized rebuttal report in violation of the Court's Orders and the Federal Rules of Civil Procedure. *Id.* The Plaintiff, through Attorney Lee J. Rohn, filed a response in opposition, Dkt. No. 190, and Defendants filed a reply. Dkt. No. 207. For the reasons that follow, the Court will grant the Motion to Strike.

## BACKGROUND

Plaintiff's Complaint, which was removed from Superior Court to this Court in December 2023, alleges that she was hired in December 2013 by the Defendants to act as a

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 2

property manager for a rental property owned by Miramar VI, LLC on St. Croix. Dkt. No. 1-1 ¶¶ 6-8. As part of her duties, Plaintiff was required to live in an apartment on the property. *Id*. ¶ 9. After Hurricane Maria in 2017, the apartment allegedly sustained damage that led to water leaks and mold growth. *Id.* ¶¶ 16-17. Plaintiff claims that Defendants were negligent and caused her physical injury by refusing to approve repairs to address the mold, which she alleges caused sinus and breathing problems, leading to medical treatment. *Id*. ¶¶ 16-26. Defendants filed an Answer and a Counterclaim in January 2024. Dkt. No. 14.

On March 19, 2024, the Court entered a Scheduling Order that required Plaintiff to serve her expert reports by January 27, 2025. *See* Dkt. No. 28 at 3. The Scheduling Order further provided that "[n]o rebuttal reports" would be permitted without seeking "leave of Court." *Id*. On October 31, 2024, the Court amended the Scheduling Order, extending the expert report deadline to April 7, 2025, while maintaining the prohibition on rebuttal reports absent leave. Dkt. No. 87 at 6.

### A. The Expert Reports

Plaintiff's causation expert, Dr. Joseph Smolarz, served his initial expert report on April 7, 2025. Dkt. Nos. 166 (Notice); 190-2 (Report). In his four-page report, Dr. Smolarz discussed the potential health impacts of mold exposure on Plaintiff, citing medical literature linking mold exposure to conditions such as chronic sinusitis, allergic rhinitis, fatigue, and cognitive dysfunction. Dkt. No. 190-2 at 2–4. He summarized the timeline of Plaintiff's symptoms, which he stated began after she moved into the apartment in 2014 and worsened following water damage and mold growth in 2019. *Id.* He also noted that the property

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 3

sustained water damage after Hurricane Maria in 2017 that was not promptly repaired, resulting in ongoing moisture intrusion. *Id.* at 2. Dr. Smolarz referenced an ADCON Environmental Services report[1] from a June 2022 inspection of Ms. Lammering's apartment, which identified visible mold and water damage but did not include air quality testing. *Id.* He concluded that mold exposure significantly contributed to Plaintiff's health issues. However, the lack of air quality and allergy testing limited his ability to fully assess the extent of the exposure's impact. *Id.* at 2–4.

On May 22, 2025, Defendants served the expert report of Dr. Dennis Hooper, their medical expert. Dkt. Nos. 171 (Notice), 207-1 (Report). Dr. Hooper relied on Plaintiff's medical records, the ADCON Environmental Report, and peer-reviewed toxicological studies addressing mold and mycotoxin exposure. Dkt. No. 207-1. He applied the Bradford Hill criteria, a nine-factor framework used in epidemiology and toxicology, to assess causation between Plaintiff's alleged mold exposure at the property and her chronic rhinosinusitis. *Id.* at 4–6. Dr. Hooper noted that Plaintiff's records reflected self-reported "real bad sinus issues" in 2013, years before the alleged mold exposure in the apartment; that "no objective medical or laboratory evidence" connected mold to Plaintiff's condition; and that the literature "does not establish a known biological mechanism linking household mold

---

[1] ADCON Environmental LLC is an environmental services company that specializes in asbestos, lead, mold abatement, remediation, testing, investigation and consulting services. *See* ADCON, https://www.adconenvironmentalservices.com/ (last visited Nov. 10, 2025). As part of discovery, Plaintiff provided the ADCON Environmental Report, a detailed indoor air quality inspection conducted on June 14, 2022, at her apartment. Dkt. No. 207-4.

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 4

exposure to chronic rhinosinusitis." *Id.* at 5. He further observed that the ADCON Environmental Report contained no air quality testing data capable of supporting a causal inference concerning Plaintiff's condition. *Id.* He concluded that all nine of the Bradford Hill criteria were not met in Ms. Lammering's case and that the evidence did not support a cause-and-effect relationship between mold in the apartment and her chronic rhinosinusitis. *Id.*

On July 7, 2025, two business days before the scheduled deposition of Dr. Smolarz, Plaintiff served a fourteen-page report titled "Dr. Joseph Ryan Smolarz's rebuttal report regarding the Application of Bradford Hill criteria and Documented Impacts of Environmental Mold and Mycotoxins in the Case of Jamie Lammering" (the "July 7 Report"). Dkt. Nos. 179 (Notice), 190-1 (Report). The July 7 Report discussed the impacts of environmental mold and mycotoxins on human respiratory and immune systems, described several mold species and their toxic byproducts, and asserted that such exposures can contribute to chronic rhinosinusitis. Dkt. No. 188-1. It identified a temporal relationship between Plaintiff's symptoms and her alleged mold exposure, relying on medical records and environmental information. *Id.* at 12–16. Additionally, the July 7 Report applied the Bradford Hill criteria and concluded that the evidence "strongly support[ed] a causal link between mold exposure and chronic rhinosinusitis" and declared that Plaintiff had no prior history of chronic rhinosinusitis before living in the mold-affected apartment. *Id.* at 4–9.

### B. Defendants' Motion to Strike

On July 18, 2025, Defendants filed a Motion to Strike Plaintiff's July 7, 2025 Expert Report (the "Motion"). Dkt. Nos. 187, 188. They argue that the July 7 Report violated the

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 5

Amended Scheduling Order, which prohibited rebuttal reports without prior leave of Court, and contravened the deadlines set by Rule 26(a)(2)(D)(ii)[2] for rebuttal disclosures. Dkt. No. 188 at 4–5. They assert that the July 7 Report, labeled as a "Rebuttal Report," introduced new scientific theories and directly rebutted Dr. Hooper's opinions, making it an unauthorized rebuttal rather than permissible supplementation. *Id.* at 2–3. Defendants emphasize that the report was served after the expert disclosure deadline and only two business days before Dr. Smolarz's deposition. *Id.* at 2.

Defendants further highlight that Plaintiff's counsel filed a "corrected" version of the Report on July 9, 2025, changing only the word "rebuttal" in the title to "supplemental" while the content stayed the same. Dkt. Nos. 188-1 (Report), 188-4 (Corrected Report). Defendants also provide email correspondence in which they informed Plaintiff's counsel that the July 7 Report was an untimely rebuttal report that violated the Court's Scheduling Order and requested Plaintiff withdraw it. Dkt. Nos. 188-2, 188-3 (email correspondence). Plaintiff's counsel responded that the report required supplementation due to "newly discovered information regarding Dr. Hooper's publications" and threatened Rule 11 sanctions if Defendants filed a motion to strike. *Id.* After Plaintiff's counsel refused to withdraw the report, Defendants filed the present Motion. Dkt. Nos. 187, 188 at 5.

---

[2] Rule 26(a)(2)(D)(ii) requires that if a party intends to use expert testimony solely to contradict or rebut evidence on the same subject matter identified by another party, that rebuttal disclosure must be made within 30 days after the other party's disclosure. In this case, 30 days from Dr. Hooper's disclosure would have been June 21, 2025.

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 6

### C. Plaintiff's Response

On August 20, 2025, Plaintiff filed a Response in Opposition. Dkt. No. 190. Plaintiff argues that although Dr. Smolarz, a non-attorney, initially used the term "rebuttal" in the July 7 Report's title, the report should be treated as a supplement to his original report because the substance, not the label, controls. *Id.* at 6. Plaintiff maintains that the July 7 Report does not introduce new opinions or expand Dr. Smolarz's testimony but rather reaffirms his original conclusions by analyzing the data relied upon by Dr. Hooper and clarifying points about medical consistency over time. *Id.* Lammering further asserts that supplementation was required under Rule 26(e), which mandates disclosure when a prior report is "incomplete or incorrect in some material respect," and the additional information was not otherwise disclosed during discovery. *Id.* She contrasts this with Rule 26(a)(2)(D)(ii), which governs rebuttal expert reports "intended solely to contradict or rebut evidence on the same subject matter," and argues that the July 7 Report did not rebut Dr. Hooper's opinions but instead responded to a new analytical framework not previously disclosed, ensuring that Dr. Smolarz's opinions were more accurate and complete. *Id.* at 7–8.

Plaintiff identifies three issues raised in Dr. Hooper's report that she claims warranted supplementation: (1) Dr. Hooper's use of the Bradford Hill criteria, which Plaintiff characterizes as a "new analytical framework" not previously disclosed by Defendants; (2) his reliance on a 2013 chiropractic record noting Plaintiff's prior sinus issues, which he used to suggest a preexisting condition undermining the link between mold exposure and Plaintiff's symptoms; and (3) his criticism of the ADCON Environmental Report for not

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 7

identifying specific contaminants. *Id.* at 9–10. Plaintiff explains that because Dr. Smolarz did not initially review the chiropractic records, the July 7 Report updated his analysis to incorporate those records and situate them within Plaintiff's medical history. *Id.*

Finally, Plaintiff contends that even if the July 7 Report is considered a rebuttal report, exclusion is not automatic. *Id.* at 11. Plaintiff references Rule 37(c)(1), which permits exclusion only if a failure to disclose is neither substantially justified nor harmless and urges the Court to consider the *Pennypack* factors to determine whether exclusion is appropriate. *Id.* (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)). Plaintiff argues that the *Pennypack* factors weigh against striking the July 7 Report. *Id.*

### D. Defendants' Reply

On September 12, 2025, Defendants filed a Reply. Dkt. No. 207. They reaffirm their position that the July 7 Report is an unauthorized rebuttal report filed without leave of Court in violation of the Amended Scheduling Order. *Id.* at 1–2; *see also* Dkt. No. 87 at 6. Defendants dispute Plaintiff's claim that the report qualifies as permissible supplementation under Rule 26(e), arguing that it neither corrects inaccuracies nor introduces previously unavailable information. *Id.* They contend that none of the three purported "new" issues meet the standard for supplementation. *Id.* First, the Bradford Hill criteria, which Plaintiff characterizes as a new analytical framework, have been in use since 1965 and are commonly referenced in toxicology and epidemiology, including in numerous mold exposure cases. *Id.* at 2. Defendants assert that Dr. Smolarz could have relied on these criteria in his April 7,

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 8

2025 report but did not. *Id.* at 1. Second, they note that the 2013 chiropractic record reflecting "real bad sinus issues" was produced by Plaintiff during discovery on February 7, 2025, and was addressed in her December 2024 deposition. *Id.* at 2. Therefore, Dr. Hooper's use of that record did not introduce a "new preexisting condition theory" nor was he relying on information previously unavailable. *Id.* at 2. Third, they point out that the ADCON Environmental Report, which Dr. Hooper criticized, was cited in Dr. Smolarz's initial report, so any commentary on its methodology cannot constitute new information. *Id.* at 2; *see also* Dkt. Nos. 207-3 (Dr. Smolarz Initial Report), 207-4 (ADCON Report).

Defendants further argue that the July 7 Report mirrors Dr. Hooper's opinions point by point, introducing new literature, revisiting medical records, broadening Dr. Smolarz's causation theory, and effectively rewriting his original report, all of which are characteristic of rebuttal reports. *Id.* at 3–4. They claim that serving the July 7 Report two business days before Dr. Smolarz's deposition caused significant prejudice, depriving them of time to review the new material, consult with Dr. Hooper, and prepare additional questioning. *Id.* at 4. Defendants also argue that the late disclosure will disrupt the case schedule, as *Daubert* motions have already been filed,[3] and additional depositions or briefing would require adjusting deadlines and incur extra costs for experts, court reporting, and attorney's fees. *Id.*

_____

[3] In addition to the *Daubert motions,* since the close of expert discovery on July 18, 2025, the parties have filed numerous motions, including dispositive motions, motions in limine, and accompanying Statements of Undisputed Facts. *See, e.g.,* Dkt. Nos. 192–202 (Plaintiff's and Defendants' cross-motions for summary judgment and supporting materials); Dkt. Nos. 195–196, 198 (motions in limine); Dkt. Nos. 200–202 (Defendants' summary judgment motion

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 9

Because Plaintiff did not seek leave of Court and provided no substantial justification for the timing of the July 7 Report, Defendants ask the Court to strike the report, preclude its use at trial, and bar Dr. Smolarz from relying on any opinions contained in it if he is permitted to testify following Defendants' *Daubert* challenge. *Id.* at 5.

## DISCUSSION

The first question before the Court is whether the July 7 Report submitted by Dr. Smolarz is a rebuttal report or a supplemental report. If it is a rebuttal report, the Court must determine whether exclusion is warranted since the Amended Scheduling Order expressly prohibited rebuttal reports without leave of Court, and no such leave was requested. However, if the report is a supplemental report, the Court must determine whether it would be permissible under Fed. R. Civ. P. 26(e), as a timely correction or completion of prior disclosures.

### I.    Whether Dr. Smolarz's July 7 Report Is a Rebuttal Report or a Supplemental Report

#### A.   Applicable Rules and Case Law

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires disclosure of expert identities and written reports, including a complete statement of the expert's opinions and their basis. Fed. R. Civ. P. 26(a)(2)(A), (B)(i). These disclosures must comply with the court's schedule. Fed. R. Civ. P. 26(a)(2)(D); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-

---

and supporting filings). The briefing on the Motion to Strike itself was not completed until September 12, 2025, further underscoring the advanced posture of the case.

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 10

92 (3d Cir. 1994). Rebuttal reports, under Rule 26(a)(2)(D)(ii), are meant solely to contradict or rebut evidence from another party, not to address general subject matter. *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013); *In re Asbestos Prods. Liab. Litig. (No. IV)*, No. 09-74410, 2012 WL 661660, at *3 (E.D. Pa. Feb. 29, 2012). Rebuttal reports cannot introduce new opinions or methodologies that could have been included in the initial report. *Bradley v. Amazon.com, Inc.*, No. 17-1587, 2023 WL 2574572, at *13–14 (E.D. Pa. Mar. 17, 2023).

Moreover, supplementation is required if a party learns that material information is "incomplete or incorrect," *and if* the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. *Kimmel v. Massachusetts Bay Ins. Co.*, No. 21-12743, 2023 WL 8714336, at *4 (D.N.J. Dec. 15, 2023) (citing Fed. R. Civ. P. 26(e)(1)) (citation modified); *see also Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 629 (D.N.J. 2022) ("Supplementation is proper only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.") (citation modified). "Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) (citation modified). "In short, Rule 26 imposes a *duty* not a *right* to produce information in a belated fashion." *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 563 (D.N.J. 2022) (emphasis in original). Furthermore, a rebuttal report cannot be labeled as a supplement to bypass a court's scheduling order. *Reichhold, Inc. v. U.S. Metals Ref. Co.*, No. 03-cv-453, 2007 WL 1428559, at *14 (D.N.J. May 10, 2007).

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 11

### B.  Application

The July 7 Report critiques Dr. Hooper's expert analysis, directly responding paragraph by paragraph, to his application of the Bradford Hill criteria to Plaintiff's case. *See Bradley v. Harrah's Atlantic City Operating Co., LLC*, No. 21-10485, 2023 U.S. Dist. LEXIS 153620, at *1 (D.N.J. Feb. 27, 2023) (rebuttal reports systematically address each part of the opposing expert's analysis); *Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2013 WL 5410531, at *2 (D.N.J. Sept. 26, 2013) (rebuttal reports critique the evidence and opinions offered by the opposing expert). At his deposition, Dr. Smolarz confirmed that the July 7 Report was prepared "to address [Dr. Hooper's] concerns." Dkt. No. 207-5 at 36–37. Courts have treated similar reports as rebuttal where the expert expressly stated he was responding to an opposing expert and offered a point-by-point critique. *Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 3:15-CV-537, 2018 WL 493248, at *2 (M.D. Pa. Jan. 19, 2018).

The July 7 Report was initially titled "rebuttal report regarding the Application of Bradford Hill criteria," Dkt. No. 188-1, aligning with its function as a rebuttal; the change of title to "supplemental report" does not make it one, particularly because its content remained that of a rebuttal report. *See Reichhold, Inc.*, 2007 WL 1428559, at *14 (rejecting an untimely "supplement" where the party sought to respond to the opposing expert's opinions, finding that such a report was rebuttal and could not circumvent the court's deadlines). Courts reject attempts to re-label rebuttal material as "supplementation" when the report merely responds to the opposing expert's criticisms or bolsters the initial opinions. *Id.*; *see also Novartis Pharms. Corp.*, No. 12–36, 2013 WL 7045056, at *7 (D. Del. Dec.

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 12

23, 2013) (a report that "clarifies" or strengthens an expert's earlier opinions in response to an opponent's criticisms is rebuttal, not Rule 26(e) supplementation); *id.* at *8 (explaining that a party may not avoid scheduling orders by characterizing a rebuttal report as supplemental).

Furthermore, the July 7 Report cannot be considered supplemental because it neither corrects inaccuracies in the initial disclosure nor fills the interstices of an incomplete report based on information that was previously unavailable to Dr. Smolarz. *See Novartis Pharms. Corp.*, 2013 WL 7045056, at *8 (an expert report "does not qualify as a supplemental report under Rule 26(e) when it does not correct inaccuracies or add information unavailable to expert at the time of their initial report") (citation modified). Here, the Bradford Hill criteria were already known and used in the field, and Dr. Smolarz could have included them in his initial report. Similarly, the 2013 chiropractic record and the ADCON Environmental Report were produced by Plaintiff prior to the discovery deadline of February 7, 2025, and well before Dr. Smolarz's initial report deadline on April 7, 2025. *Id.*; *see also Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2019 WL 581544, at *4 (D.N.J. Feb. 13, 2019) (revising a report using previously available information is not supplementation); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. at 425 (Rule 26(e) does not allow supplementation to fix inadequacies in an initial report). The use of these materials in the July 7 Report was a response to Dr. Hooper's report, and thus not a valid supplement. *See Novartis Pharms. Corp.*, 2013 WL 7045056, at *7 (rejecting attempts to supplement an expert report with new analyses developed in response to opposing expert's report). For these

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 13

reasons, the Court concludes that the July 7 Report is a rebuttal expert report subject to Rule

26(a)(2)(D)(ii). Since the Scheduling Order prohibited rebuttal reports without leave, and

no leave was sought, the Court will now consider whether exclusion of the July 7 Report is

warranted.

## II.    Whether the Court Should Strike the Rebuttal Report

### A.  Rule 16(b) Standard

Federal Rule of Civil Procedure 16 authorizes courts to issue scheduling orders to

ensure orderly litigation. Fed. R. Civ. P. 16; *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d

Cir. 1990). Under Rule 16(b)(4), a party can modify a scheduling order upon a showing of

"good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To establish good cause,

the party must demonstrate that compliance could not be reasonably met despite its diligent

efforts. Fed. R. Civ. P. 16(b); *Faiella*, 341 F.R.D. at 558; *id.* at 558–59 (explaining that a valid,

and reasonable reason for noncompliance can satisfy the requirement for diligence). Courts

consistently hold that the good cause standard is not satisfied when a party was aware of the

facts that would lead it to seek leave but failed to act. *See, e.g.*, *Roggio v. F.B.I.*, Civ. No. 08-

4991, 2011 WL 3625042, at *5 (D.N.J. Aug. 17, 2011) (collecting cases); *Eichorn v. AT & T*

*Corp.,* 484 F.3d 644, 651 (3d Cir. 2007).

Exclusion of expert reports is a well-established remedy for scheduling order

violations where no good cause is shown. *See Lockhart v. Willingboro High Sch.*, No. 14-3701,

2017 WL 11465996, at *7 (D.N.J. May 3, 2017) (affirming exclusion of expert material

improperly labeled as "supplementation," in violation of Rule 16(b)); *see also Hamilton v.*

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 14

*Dowson Holding Co.*, No. 2008-2, 2010 WL 3119912, at *4 (D.V.I. July 30, 2010) (striking supplemental expert report where the party offered "little to no justification" for violating scheduling order); *Robinson v. Freightliner LLC,* No. 08-cv-761, 2010 WL 887372, at *1 (M.D. Pa. Mar. 10, 2010) ("A court may exclude late expert testimony . . . if filed in violation of a scheduling order.") (citation modified); *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

### B.  Application

The Amended Scheduling Order, entered October 31, 2024, expressly prohibited rebuttal reports without prior leave of Court. Dkt. No. 87. Because the Court has determined that the July 7 Report is a rebuttal report, *see supra*, Plaintiff's failure to seek leave before filing it violated the Order. *Novartis Pharms. Corp.*, 2013 WL 7045056, at *8. This violation falls squarely under Rule 16(b)(4). *See Faiella*, 341 F.R.D. at 560 (Rule 16(b)'s good cause standard applies when a party produces evidence in disregard of a scheduling order). To show good cause, Plaintiff must prove it made diligent efforts to comply with the Scheduling Order. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). The diligence inquiry asks whether Plaintiff possessed, or through reasonable diligence should have possessed, the knowledge necessary to seek leave from the Court. *Smith v. Honeywell Intern. Inc.*, Civ. No. 10-3345, 2014 WL 301031, at *6 (D.N.J. Jan. 27, 2014).

The Court finds that Plaintiff has not shown diligence. Plaintiff was aware that rebuttal reports required leave because the Court's initial Scheduling Order, issued March 19, 2024, and the Amended Scheduling Order issued afterwards, both expressly prohibited

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 15

rebuttal reports without prior permission. Moreover, even if leave had not been required, the July 7 Report was still untimely. Rule 26(a)(2)(D)(ii) requires that rebuttal disclosures be served within 30 days after the other party's expert disclosure, here, Dr. Hooper served his report on May 22, 2025, making Plaintiff's rebuttal deadline June 21, 2025. Fed. R. Civ. P. 26(a)(2)(D); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 791–92. Plaintiff did not serve the July 7 Report until more than two weeks after that deadline. *See GlobespanVirata, Inc. v. Texas Instruments, Inc.*, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (no good cause where a party fails to act promptly despite possessing the necessary information). Plaintiff knew of Dr. Hooper's opinions and recognized the need to respond, as evidenced by the rebuttal content of the July 7 Report but failed to seek leave as required. *Novartis Pharms. Corp.*, 2013 WL 7045056, at *8 (leave is required where scheduling orders prohibit rebuttal reports). Instead, Plaintiff filed the July 7 Report as a "rebuttal report," and after Defendants objected that it was an impermissible rebuttal, she withdrew it, relabeled it, and refiled it as a "supplemental report." This relabeling does not show diligence; it suggests a strategic attempt to circumvent the Scheduling Order. *See Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 121 (W.D. Pa. 2010) (tactical decisions and delays by experienced counsel do not establish diligence); *see also Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. 99-3121, 2008 WL 4378294, at *5 (D.N.J. Sept. 23, 2008) (excluding essential evidence where noncompliance appeared strategic).

The timing of the July 7 Report further confirms Plaintiff's lack of diligence. *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279–80 (E.D. Pa. 2010) (diligence requires a party to

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 16

timely act on information in its possession). Plaintiff waited more than six weeks after receiving Dr. Hooper's report and then served the July 7 Report only two business days before Dr. Smolarz's deposition, depriving Defendants of a fair opportunity to analyze the new material, consult with their expert, and prepare for the deposition. *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005); *see also Faiella*, 341 F.R.D. at 563 (noting that strict enforcement of deadlines prevents a party from introducing new expert analyses on short notice). Allowing the filing to stand would undermine the orderly progression of the case. *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986).

Plaintiff's mistaken or strategically mistaken belief that the July 7 Report qualified as a supplemental disclosure does not excuse the Scheduling Order violation. A mistake of law "does not constitute good cause." *King v. Timmoney*, No. 02-cv-6669, 2003 WL 22436228, at *6 (E.D. Pa. Oct. 24, 2003); *see also Graham*, 271 F.R.D. at 121 (attorney error is insufficient to constitute good cause under Rule 16(b)). Nor may a party use Rule 26(e) as a "loophole" to correct or expand expert opinions after deadlines have passed, especially when a scheduling order expressly prohibits rebuttal reports absent leave. *Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322, at *3 (D. Del. May 19, 2011); *Novartis Pharms. Corp.*, 2013 WL 7045056, at *5 (an obligation to supplement does not excuse noncompliance with a scheduling order).

Because Plaintiff violated the Scheduling Order without good cause, exclusion is warranted. *See Faiella*, 341 F.R.D. at 563; *Zydus Worldwide DMCC v. Teva API Inc.*, No. 19-17086, 2025 WL 2057828, at *6 (D.N.J. July 22, 2025); *Lockhart*, 2017 WL 11465996, at *7; *68.94 Acres of Land,* 918 F.2d at 396. Therefore, the Court will grant the Defendants' Motion

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 17

to Strike and prohibit Plaintiff from relying on the July 7 Report in its summary judgment

filings and at trial.

### C.   Further Support for Striking the July 7 Report

Plaintiff argues that the Court should apply the *Pennypack* factors to determine

whether the July 7 Report should be stricken. Dkt. No. 190; 559 F.2d at 904–05. Plaintiff's

reliance on *Pennypack* is misplaced. The Court's Scheduling Order expressly prohibited

rebuttal reports without leave. Dkt. No. 87 at 6. However, on July 7, 2025, Plaintiff served a

document titled "rebuttal report," withdrew it, and then re-served the same document as a

"supplemental" report. Dkt. Nos. 181, 182, 183, 184. As explained above, the July 7 Report is,

in substance, a rebuttal report. *See supra*. Serving an unauthorized rebuttal report violated

the Scheduling Order, and such violations are governed by Rule 16(b), which requires

diligence in complying with court ordered deadlines and directives. *Faiella*, 341 F.R.D. at

562–66.

*Pennypack* does not excuse noncompliance with a scheduling order because it is a

Rule 37 sanctions framework, not a substitute for Rule 16(b)'s diligence requirement. *Id.* at

563, 566. Courts consistently hold that Rule 16, not *Pennypack*, controls when a party

violates a scheduling order. *See Finjan, Inc. v. Rapid7, Inc.*, No. 18-1519, 2020 WL 5798545,

at *5–6 (D. Del. Sept. 29, 2020) (Rule 16 governs violations of a scheduling order); *Otsuka*

*Pharm. Co. v. Aurobindo Pharma Ltd.*, No. 14-3306, 2017 WL 11463663, at *4–5 (D.N.J. Sept.

15, 2017) (same).

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 18

Although Rule 16(b) governs, the Court considers *Pennypack* in the alternative because Plaintiff relies on it, Dkt. No. 190, but not because it is required in this instance. Under *Pennypack*, courts evaluate five factors when determining whether exclusion is appropriate under Rule 37(c)(1):

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

559 F.2d at 904–05; *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial.") (citation modified). The *Pennypack* analysis is flexible, and exclusion may be warranted even if not all factors support it. *See Astrazeneca AB v. Mut. Pharm. Co.*, 278 F. Supp. 2d 491, 510 (E.D. Pa. 2003), *aff'd sub nom. Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719–20 (3d Cir. 1997) (affirming exclusion where several factors weighed against the party, emphasizing that courts need not find every factor satisfied).

First, regarding prejudice, the timing of the July 7 Report supports exclusion. Plaintiff served the July 7 Report more than six weeks after Dr. Hooper's expert report and only two business days before Dr. Smolarz's deposition. This deprived Defendants of a meaningful opportunity to review the new material, consult with their expert, and prepare for the

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 19

deposition. Courts consistently find that late expert disclosures are prejudicial because they hinder a party's ability to respond. *See Nicholas v. Pa. State Univ.*, 227 F.3d 148, 155 (3d Cir. 2000) (affirming exclusion where untimely disclosures deprived opposing party of adequate time to prepare). This prejudice is not unique. Courts also recognize that when scheduling orders are violated, "an opposing party is often prejudiced by the ensuing delay and resultant expense." *Astrazeneca AB*, 278 F. Supp. 2d at 508 (quoting *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997)). The prejudice here is therefore direct, predictable, and significant.

Second, the ability to cure prejudice and the risk of disrupting the orderly progress of the case also support exclusion. This case has been pending since August 2023 and concerns alleged injuries from 2019 or earlier. *See* Dkt. No. 1-1. The Court's Amended Scheduling Order set July 18, 2025 as the close of expert discovery. *See* Dkt. No. 87 at 6. Curing the prejudice would require reopening expert discovery, re-deposing Dr. Smolarz, and permitting Defendants to serve a responsive report. That step would significantly disrupt the litigation at this stage. Defendants filed their Motion to Strike on July 18, 2025, and briefing on that motion was not completed until September 12, 2025. Dkt. Nos. 187, 207. During that same period, both parties filed numerous dispositive motions, Dkt. Nos. 192, 193, 200, 202, evidentiary motions, Dkt. Nos. 195, 196, 198, 199, and Statements of Undisputed Facts, Dkt. Nos. 194, 201. Reopening discovery at this juncture would require the parties to revisit these filings, extend briefing schedules, and delay any potential trial date. Courts routinely decline to reopen discovery when doing so would disrupt a case's progress or

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 20

undermine the orderly administration of the docket. *See Praxair, Inc.*, 231 F.R.D. at 463
(disruption caused by late expert analyses is unacceptable); *Faiella,* 341 F.R.D. at 563
(scheduling orders must be strictly enforced to prevent delay); *Koplove*, 795 F.2d at 18
(same). The Third Circuit likewise upholds exclusion where late disclosures threaten the
Court's case management. *See Konstantopoulos*, 112 F.3d at 719–20. Under these
circumstances, the disruption that would result from reopening discovery weighs strongly
in favor of exclusion.

Third, the bad faith or willfulness factor also supports exclusion. Plaintiff bypassed
the Court's Scheduling Order requirement to seek leave before filing the July 7 Report,
withdrew it after Defendants objected that it was an impermissible rebuttal report, and then
refiled the same report under a different title without ever seeking leave. *See BearBox LLC v.
Lancium LLC*, No. CV 21-534, 2022 WL 17403466, at *2 (D. Del. Nov. 23, 2022), *aff'd,* 125
F.4th 1101 (Fed. Cir. 2025) (disregarding the express terms of a scheduling order indicates
bad faith under *Pennypack* and weighs in favor of exclusion); *Vaskas v. Kenworth Truck Co.*,
No. 3:10-cv-1024, 2013 WL 1207963, at *4 (M.D. Pa. Mar. 25, 2013) (serving an expert report
without leave supports finding of willfulness). Although Plaintiff insists the July 7 Report was
"required" supplementation, she offers no reasonable explanation for failing to seek leave,
nor for serving the report two business days before the deposition. A party's explanation is
relevant to the bad faith and willfulness inquiry. *Novartis Pharms. Corp.*, 2013 WL 7045056,
at *7 n.8; *see also Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, No. 10-487, 2013 WL
1776104, at *2 (D. Del. Apr. 17, 2013) ("Although certain articulations omit the 'explanation'

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 21

factor, the non-movant's explanation is still considered under the bad faith or willfulness factor."); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012). Here, Plaintiff's only response to Defendants' procedural objection was to relabel the report and threaten Rule 11 sanctions rather than address the undisputed violation of the Scheduling Order. That type of escalation—paired with no meaningful justification for missing the deadline—supports a finding of willfulness and bad faith. *See Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 589, 592 (D.N.J. 1994) (unsatisfactory explanations for violating scheduling orders "may be characterized fairly as a willful and bad faith breach"). Therefore, the fourth factor weighs in favor of exclusion.

Finally, the importance of the evidence does not outweigh the violation of the Scheduling Order. Plaintiff argues that the Report is necessary to respond to Dr. Hooper's application of the Bradford Hill criteria. But the July 7 Report does not rely on any newly discovered information. It draws entirely from medical records, environmental information, and scientific literature that were available to Dr. Smolarz before his April 7 deadline. Courts routinely reject late disclosures when the underlying information was available earlier. *See, e.g.*, *Faiella*, 341 F.R.D. at 563 (rejecting characterization of late opinions as "supplementation" when they attempted to introduce information previously available); *BearBox LLC*, 2022 WL 17403466, at *2 (excluding late-disclosed evidence when it should have been introduced earlier in the process); *GlobespanVirata, Inc.*, 2005 WL 1638136, at *3. Excluding the July 7 Report also does not leave Plaintiff without expert testimony on causation. Dr. Smolarz's initial report remains part of the record, and Plaintiff may rely on

the opinions disclosed therein. Courts have found exclusion appropriate where, as here, the party still retains expert evidence, and exclusion would not "cripple" the case. *Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 WL 521894, at *4–5 (D. Del. Feb. 15, 2007) (excluding late-disclosed evidence because similar expert material remained available). The same reasoning applies here: Plaintiff may present her expert's initial causation opinions, but she cannot expand them in violation of the Scheduling Order. *See 360Heros v. GoPro*, No. 17-1302, 2022 WL 2063262, at *2 (D. Del. June 8, 2022) (rejecting additional expert material where the party still had its original experts and allowing the new report would disrupt deadlines); *Praxair, Inc.*, 231 F.R.D. at 463 (rejecting late expert analysis despite its significance because it disrupted the orderly progress of the case). Even if the Court were persuaded that the July 7 Report carries some significance, the Third Circuit has made clear that not all *Pennypack* factors must favor exclusion for the sanction to be warranted. *Konstantopoulos*, 112 F.3d at 719–20; *see also Astrazeneca AB*, 278 F. Supp. 2d at 508 (courts may exclude evidence even if not every factor is met, particularly in complex cases); *Bridgestone Sports*, 2007 WL 521894, at *4–5 (same). Here, the prejudice to Defendants, the inability to cure that prejudice without disrupting the schedule, and the willful nature of the disclosure each weigh strongly in favor of exclusion. Any perceived importance of the July 7 Report cannot overcome those considerations.

Thus, even under *Pennypack*, the significant prejudice, lack of cure, disruption to the schedule, and willful disregard of the Court's Order all confirm that exclusion of the July 7 Report is warranted.

*Lammering v. Korn*
1:23-cv-00059-WAL-EAH
Order
Page 23

## CONCLUSION

For the foregoing reasons, the Court finds that the July 7 Report constitutes an unauthorized rebuttal expert report served in violation of the Court's Amended Scheduling Order. Therefore, the Court will strike Plaintiff's July 7 Report.

Accordingly, it is hereby **ORDERED** that the "Motion to Strike Rebuttal Report," Dkt. No. 187, is **GRANTED.**

ENTER:


Dated: December 11, 2025                    /s/ Emile A. Henderson III
                                            EMILE A. HENDERSON III
                                            U.S. MAGISTRATE JUDGE